# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## PINE BLUFF DIVISION

STACEY D. FRANKLIN                                                                                    PLAINTIFF
ADC #153268

v.                                              5:18cv00160-KGB-JJV

TREVOR M. SUTTON, Corporal,                                                              DEFENDANTS
Barbara Ester Unit; *et al.*

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Kristine G. Baker. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence proffered at the hearing (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.      The details of any testimony desired to be introduced at the new hearing in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing. Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## **DISPOSITION**

### I. INTRODUCTION

Stacey D. Franklin ("Plaintiff"), currently incarcerated at the Randall Williams Correctional Facility, filed a *pro se* Complaint pursuant to 42 U.S.C. § 1983. (Doc. No. 2.) After I advised Plaintiff that claims in his original Complaint were deficient, he filed an Amended Complaint. (Doc. No. 4.) Upon screening, Plaintiff's Amended Complaint, his claims against Defendants Edwards and Griffin were dismissed. (Doc. Nos. 5, 26.) Defendant Carter has also been dismissed from this action. (Doc. Nos. 18, 26.) Plaintiff's claim that Defendant Sutton failed to protect him from another inmate housed with Plaintiff at the Ester Unit remains pending. (Doc. No. 4.)

Defendant Sutton has now filed a Motion for Summary Judgment. (Doc. Nos. 27-29.) Plaintiff has not responded and the time for doing so has passed; this matter is now ripe for a decision. After careful review, and for the following reasons, I find Defendant Sutton's Motion for Summary Judgment should be GRANTED and this case dismissed.

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A).

When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III. ANALYSIS

#### A. Official Capacity Claims

Plaintiff sued Defendant Sutton in both his personal and official capacity. (Doc. No. 4.) "A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). To establish municipal liability, a plaintiff must prove that a policy, practice, or custom attributable to the municipality caused the constitutional injury. *See id.* Because Plaintiff has not alleged that any policy, practice, or custom was the moving force behind the alleged violation of his protected rights (Doc. No. 4), he has failed to state a claim for relief as to his official capacity claims. I recommend separate Defendant Sutton's Motion for Summary Judgment (Doc. No. 27) be granted as to Plaintiff's official capacity claims.

#### B. Qualified Immunity

Qualified immunity protects officials who acted in an objectively reasonable manner and shields a government official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact. *McClendon v. Story County Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (the privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.").

To determine whether a defendant is entitled to qualified immunity, courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most

favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001).[1]  A defendant is entitled to qualified immunity only if no reasonable fact finder could answer both questions in the affirmative. *Nelson v. Correctional Medical Services*, 583 F.3d 522, 528 (8th Cir. 2009).

A failure to protect claim is composed of two elements.  First, the claimant must demonstrate that his conditions of incarceration posed a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  Second, the claimant must demonstrate that the defendant prison official knew of and disregarded the risk to his safety. *Id.* at 837.  The second prong requires a finding that the defendant was deliberately indifferent. *See Whitson v. Stone County Jail*, 602 F.3d 920, 923 (8th Cir. 2010) (in analyzing failure to protect claims "the subjective inquiry regarding an official's state of mind is one of deliberate indifference to inmate health or safety.") Deliberate indifference is akin to criminal recklessness. *See Olson v. Bloomberg*, 339 F.3d 730, 736 (8th Cir. 2003).

Defendant Sutton argues he was not aware of any risk to Plaintiff from Inmate Miller before January 20, 2018—the date of the incident. (Doc. No. 27-1 at 2-3.) Before the incident, Defendant Sutton had never had any problems with Plaintiff or Inmate Miller. (*Id.* at 3.) He maintains that Plaintiff had not told him of any problems between the two, or that he feared for his safety or believed Inmate Miller might harm him. (*Id.*)

---

[1]Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Nelson v. Correctional Medical Services*, 583 F.3d 522, 528 (8th Cir. 2009) (quoting *Pearson v. Callahan*, 555 U.S. at 236).

Indeed, Plaintiff's own deposition testimony supports Defendant Sutton's contentions. Plaintiff acknowledged during his deposition that he did not even know Inmate Miller before the incident, and never had any conflict with him before the incident. (Doc. No. 27-3 at 5.) Inmate Miller was not on Plaintiff's enemy alert list. (*Id*.) Before the incident, Plaintiff never notified Defendant Sutton—or any other ADC officials—of any problems Plaintiff had with Inmate Miller and had not notified Defendant Sutton—or any other ADC officials—that Plaintiff feared for his safety regarding Inmate Miller. (*Id*.at 5-7, 9) Further, Plaintiff was asked if, before the January 20, 2018 incident, he feared for his safety when he was around Inmate Miller. (*Id*. at 5.) Plaintiff responded: "Prior to this incident, no." (*Id*. at 5.) Plaintiff did not add Inmate Miller to his enemy list after the incident. (*Id*. at 7.) After the incident, Plaintiff did not tell Defendant Sutton that he feared Inmate Miller. (Doc. No. 27-3 at 8.) Plaintiff does not believe Defendant Sutton intended for him to be injured that day. (*Id*. at 10.)

The incident began with Defendant Sutton witnessing Plaintiff and Inmate Miller in 1 Barracks, Pod C in a verbal exchange about a blanket, but he did not observe them threatening one another. (Doc. No. 27-1 at 2.) Plaintiff asserts he told Defendant Sutton "this dude's done threatened to whoop me and you're going to walk out of here?" (Doc. No. 27-3 at 2.) But when Defendant Sutton left 1 Barrack, Pod C, Inmate Miller appeared to have calmed down and had apparently left and gone to his room. (Doc. No. 27-1 at 2.)

In support of his Motion for Summary Judgment, Defendant Sutton submitted a video recording that captured the altercation between Plaintiff and Inmate Miller. (Doc. No. 27-2.) The physical altercation between Plaintiff and Inmate Miller took place in the "day room," an open room with benches, a telephone, and multiple prisoners sitting or walking freely about. (*Id*.) The altercation consisted of two brief physical skirmishes—each lasting approximately one-minute and

6

forty-five seconds—over the course of about four minutes. (*Id.*) The fight began with Inmate Miller hitting Plaintiff in the head with what, according to Plaintiff, "looked like a long nail." (Doc. No. 27-3 at 2.) The two inmates then largely circled one another with little physical contact. (Doc. No. 27-2.) The skirmish appeared to end, and Plaintiff left the day room. (*Id.*) Plaintiff then reentered the day room and engaged Inmate Miller in the second skirmish, which ended with Plaintiff holding Inmate Miller in a headlock; Plaintiff never hit Inmate Miller. (*Id.*; Doc. No. 27-3 at 2-3.) Plaintiff then released Inmate Miller, shortly after both men leave the day room. (Doc. No. 27-2.) It appears from the events depicted on the video that Plaintiff was the aggressor in the second skirmish. (*Id.*) According to Plaintiff's deposition testimony, Defendant Sutton was not in the barracks when the physical fight began, and Plaintiff does not know where Defendant was at that time; Defendant Sutton was not in the barracks at any time during the fight. (Doc. No. 27-3 at 4-5.)

The Court of Appeals for the Eighth Circuit has repeatedly held that a surprise attack by a fellow inmate fails to satisfy the failure to protect analysis. *See, for example, Patterson v. Kelley*, 902 F.3d 845 (8th Cir. 2018). Plaintiff testified that before the incident, he did not fear Inmate Miller and Plaintiff had never reported to Defendant Sutton—or anyone else—that he feared for his safety in connection with Inmate Miller.

Plaintiff also testified that he questioned Defendant Sutton leaving after Inmate Miller threatened to "whoop" him. Accepting this as true, Plaintiff nonetheless has not presented evidence that he was in a substantial risk of serious harm. Generally, "'threats between inmates are common and do not . . . serve to impute knowledge of a substantial risk of harm.'" *Young v. Selk*, 508 F.3d 868, 874 (8th Cir. 2007). Here, Defendant Sutton observed Inmate Miller having apparently calmed down after the verbal exchange, and Inmate Miller left the area of the argument

before Defendant Sutton did.  Further, Plaintiff made no further mention of Inmate Miller before—or after—their brawl.  Plaintiff's one-time comment was not sufficient, under these circumstances, to establish a substantial risk of serious harm.

In his Amended Complaint, Plaintiff alleges Defendant Sutton watched the fight between him and Inmate Miller, failed to intervene, and failed to remove him from the cell he shared with Inmate Miller even after the fight.  (Doc. No. 4 at 14.)  Plaintiff's deposition testimony on this point is not entirely clear.  He testified that Defendant Sutton was not in the barracks at any time during the physical altercation and Plaintiff did not know where Defendant Sutton was during the skirmish.  (Doc. No. 27-3 at 4.)  But Plaintiff also seems to have testified that Defendant Sutton observed the fight from a raised booth with windows from which the pods were visible.  (*Id*. at 3.)  Defendant Sutton disputes he was in the booth; he maintains he was letting inmates in from the yard at the time of the fight.  (Doc. No. 27-1 at 2.)  Any issue of fact concerning Defendant Sutton's exact location during the skirmish does not create a genuine issue of material fact in this case.  Considering all evidence in the light most favorable to Plaintiff, he has not established that Defendant Sutton had a duty to intervene.  *See Arnold v. Jones*, 891 F.2d 1370, 1373 (8th Cir. 1989) ("prison guards have no constitutional duty to intervene in the armed assault of one inmate upon other when the intervention would place the guards in danger of physical harm.")  Here, according to Plaintiff, Inmate Miller was armed with something akin to a long nail.  Accepting that Defendant Sutton was in the booth, Plaintiff testified that other than Sutton, no other ADC personnel were around at the time of the incident.  (Doc. No. 27-3 at 3.)  Further, multiple other inmates were walking freely around the area.  (*Id*.)  Intervening in such circumstances would place a guard in danger of physical harm.

8

Plaintiff has not come forward with evidence establishing Defendant Sutton's indifference. Defendant Sutton was not on notice of a substantial risk of harm to Plaintiff before the physical fight, and Plaintiff by his own testimony did not report the fight to anyone afterwards. And as to any post-fight allegations, a one-time incident resulting in harm to a plaintiff is insufficient to establish a violation of the Eighth Amendment when the prison official lacked knowledge of the event. *See Burnley v. Evans*, 249 Fed. Appx. 492, 494 (8th Cir. 2007) (unpublished *per curiam*) (*citing Lenz v. Wade*, 490 F.3d 991, 995-96 (8th Cir. 2007)). Further, nothing in the record establishes that Defendant Sutton prevented Plaintiff from changing cells. Accordingly, Defendant Sutton is entitled to qualified immunity.

IT IS, THEREFORE, RECOMMENDED that:

1. Defendant Sutton's Motion for Summary Judgment (Doc. No. 27) be GRANTED.

2. Plaintiff's claims be DISMISSED with prejudice.

3. This case be DISMISSED.

4. The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from any Order adopting this recommendation would not be taken in good faith.

DATED this 5th day of June 2019.

JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE